IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


TRAVIS LEE WALLACE, #404890       *
              Plaintiff,
          v.              *    CIVIL ACTION NO. RDB-15-2152

DEPT. OF PUBLIC SAFETY         *
DEPT OF CORRECTION
KATHERINE GREEN, *Warden of E.C.I.*    *
             Defendants.
                           \*\*\*\*\*

## <u>MEMORANDUM OPINION</u>

On July 22, 2015, the Court received for filing inmate Travis Lee Wallace's ("Wallace")

self-represented 42 U.S.C. § 1983 civil rights action.   The Complaint seeks release from

confinement and other unspecified relief from the Maryland Department of Public Safety and

Correctional Services ("DPSCS"), the Maryland Division of Correction ("DOC"), and Kathleen

Green, the Warden at the Eastern Correctional Institution ("ECI").   Defendants have filed a

Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 18), as well

as legal memorandum (ECF No. 18-1),[1] and two Declarations.   ECF No. 18-2 and ECF No. 18-3.

In response, Wallace has filed an Opposition, a Supplemental Opposition and a Motion for

Summary Judgment.   ECF Nos. 27, 28 and 29.

The matter is ready for disposition.   No hearing is necessary.   *See* Local Rule 105.6 (D.

Md. 2014).   Defendants' Motion, construed as a motion for summary judgment, IS GRANTED

and Wallace's Motion for Summary Judgment IS DENIED for reasons to follow.

---

[1]      All exhibits are referenced by their electronic filing number.

## I. Background

Wallace, who is currently confined at the Dorsey Run Correctional Facility, alleges that while housed on ECI administrative segregation on September 1, 2013, he and his cellmate argued.  The cellmate became irate and shouted at two officers that Wallace was a threat to him. Wallace claims that two officers took his cane because his cellmate had indicated that he had been threatened with it.  ECF No. 1 at pp. 3 & 4.  When questioned by one of the officers, Wallace states that he indicated that he was no threat, his cell mate was "crazy," and he did not feel safe with him in the same cell.  Wallace alleges that one of the officers stated he was not going to move anyone and the two inmates "needed to 'kiss and make up' and [he] shut the cell door while laughing."  *Id*. at p. 4   Wallace asserts that 12 to 15 seconds after the incident, his cellmate jumped him, bit off his ear, and spit it out.  *Id*. at p. 4.  After officers heard the commotion, they came on the scene.   Wallace was handcuffed, led to the medical department, and flown to Shock Trauma hospital with his ear in a bag of ice.

Wallace states that he was found not guilty of assaulting his cellmate, as the adjustment hearing officer found him to be the victim who suffered injuries while his cellmate was found guilty of assault.  He claims that he suffered a ruptured ear canal, had reconstructive surgery, and can no longer hear out of the ear.  *Id*. at p. 5.

## II. Standard of Review

Defendants' Motion is styled as a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, for Summary Judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431,

436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.  I am satisfied that given the exhibits presented here (which were also presented to

Wallace), I have ample information with which to address the pleading as filed for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:  By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).   In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to…the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

 "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). But, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs*

*v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.

In the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because Wallace is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the Court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

Defendants allege that Wallace was transferred to ECI on June 12, 2012.  ECF No. 18-2,

at Switalski Decl.   They acknowledge that on September 1, 2013, he was involved in an altercation with his cellmate, Glen Bradford.   There is no record that the two inmates were enemies or had any conflicts prior to being housed together.   Defendants state that following the incident, Wallace received treatment at the prison and at a local hospital (Peninsula Regional Medical Center).   Wallace was not found guilty of any wrongdoing and the two inmates have been housed separately after the altercation.

Defendants allege that Wallace filed an Administrative Remedy Procedure ("ARP") grievance complaining that officers did not follow proper procedures in placing the two inmates together.   ECF No. 18-2 at Switalski Decl.   The ARP was dismissed for procedural reasons.[2]  *Id*. Defendants argue that Wallace never appealed his grievance to the Inmate Grievance Office ("IGO").   ECF No. 18-3 at Neverdon Decl.

In his Oppositions, Wallace claims that Defendants DPSCS and DOC are not entitled to sovereign immunity and he has stated a claim against Warden Green in her supervisory capacity due to her inaction.   ECF No. 27.   He argues that there is a causal link between the supervisor's inaction and the injury suffered.   Wallace claims that the adjustment ticket shows that the officer came to his cell beforehand, removed his cane, and was aware of the earlier incident between cellmates.   Further, he states that he filed an ARP, which was not answered by the Warden, and was under the belief that if an ARP is not answered by the institution "you can go forward with the lawsuit."  *Id*.   Wallace additionally claims that he appealed his claim to the IGO, but it was sent back to him because he did not qualify for indigent mail.   He contends that he mailed it out

---

[2]     The ARP was dismissed.   For unknown reasons, the ARP was not construed as raising an objection to Wallace's continued housing with his cellmate, but as a challenge to disciplinary hearing procedures, which is not grievable under Division of Correction Directive 185.002.

again and he believes the officers mishandled it and "never returned [it] to the inmate or answered by the commissioner's officer for receipt purposes."  Wallace disputes Defendants' statement that he was treated at Peninsula Regional Medical Center; rather, he claims he was airlifted to University of Maryland Medical System's Shock Trauma Center.  ECF No. 28.

In his Motion for Summary Judgment Wallace claims that the information submitted by Defendants contains fabricated or incorrect information with regard to event identification number and housing location and omitted information such as statements made on an adjustment ticket regarding what transpired prior to the altercation.  He asserts that Defendants should be found guilty of contempt and he should be awarded judgment.  ECF No. 29

## IV. Analysis

The State Defendants raise several affirmative defenses: entitlement to Eleventh Amendment immunity; Wallace's failure to exhaust available administrative remedies; his failure to state a claim; and qualified immunity.  The affirmative defense of administrative exhaustion shall be addressed before the Court may examine the merits of Wallace's claims. The Prisoner Litigation Reform Act provides, in pertinent part:

(a) Applicability of administrative remedies

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent

for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).[3]

Administrative remedies must, however, be available to the inmate and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Fourth Circuit has addressed the meaning of "available" remedies in *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008):

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*See also Blake v. Ross*, 987 F.3d 693, 698-701 (4th Cir. 2015), *cert. granted*, *Ross v. Blake*, 136

---

[3]    Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by Defendants.  *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

S. Ct. 614 (2015) (review of whether there is common law "special circumstances" exception to the PLRA that relieves an inmate of his mandatory obligation to exhaust administrative remedies when the inmate erroneously believes that he satisfied exhaustion by participating in an internal investigation).

Wallace contends that his ARP appeal was twice mailed to the IGO, but was at first returned to him and, when remailed, "mishandled" by officers.  The Court is not persuaded that dismissing his Complaint on this affirmative defense is appropriate in light of his statements regarding his attempts to file an appeal to the IGO.  Instead, I shall examine whether summary judgment in favor of the named Defendants would be appropriate because the pleadings, declarations, and exhibits on file demonstrate that they did not violate Wallace's constitutional rights.

Defendants assert that the DPSCS and DOC are not persons within the meaning of 42 U.S.C. § 1983 and the State of Maryland has not waived its sovereign immunity under the Eleventh Amendment to suit in federal court.  I concur with this affirmative defense.  Defendants DPSCS and DOC are state agencies.  *See* Md. Code. Ann., Corr. Servs., Art., §§ 1-101(f) & (g), 2-101, and 3-101.  Neither a state nor an agency of a state is a "person" within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 & 70-71 (1989).  Moreover, state agencies are immune from liability under the Eleventh Amendment from a § 1983 suit in federal court without regard to the nature of the relief sought.  *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-01 (1984); *C.H. v. Oliva*, 226 F.3d 198, 201 (3rd Cir. 2000). Consequently, the Complaint against the DPSCS and DOC is subject to dismissal for want of jurisdiction.

To allege a constitutional failure-to-protect claim, Wallace must demonstrate the ways in which Defendant Green or others knew of and disregarded an excessive risk to his health and safety.  Defendants must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison official's subjective actual knowledge, as required for deliberate indifference liability under the Eighth Amendment for a prisoner's injury at the hands of another prisoner, "can be proven through circumstantial evidence showing, for example, that the substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer,* 511 U.S. at 842); *see also Danser v. Stansberry*, 772 F.3d 340, 349 (4th Cir. 2014).  Thus, Defendants must have knowledge both of the risk of harm and also that their conduct is inappropriate in light of that risk.  *See Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997).  Moreover, Wallace must allege ways in which Defendants' actions (or inactions) resulted in "serious or significant physical or emotional injury."  *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

Wallace has failed to allege how Warden Green, the only named individual defendant, personally participated in violating his rights under the law.  Under § 1983, individual liability must be based on personal conduct.  *See Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985); *see also Foote v. Spiegal,* 118 F.3d 1416, 1423 (10th Cir. 1997).  Further, absent subjective knowledge, a prison official is not liable.  *Farmer v. Brennan,* 511 U.S. 825, 847 (1994); *see*

*Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998).

Under *Shaw v. Stroud,* 13 F.3d 791 (4th Cir. 1994), supervisory liability may attach to a prison administrator under § 1983 if a plaintiff can establish three elements. These are: (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices' "; and (3) "that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* at 799 (citations omitted).   Under the first prong of *Shaw,* the conduct engaged in by the supervisor's subordinates must be "pervasive," meaning that the "conduct is widespread, or at least has been used on several different occasions." *Id.*   Furthermore, in establishing "deliberate indifference" under *Shaw's* second prong, a plaintiff "[o]rdinarily…cannot satisfy his burden of proof by pointing to a single incident or isolated incidents ... for a supervisor cannot be expected ... to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Slakan v. Porter,* 737 F.2d 368, 373 (4th Cir. 1984).   Deliberate indifference, however, may be satisfied by showing "[a] supervisor's continued inaction in the face of documented widespread abuses." *Id.*   Wallace has not made such a showing here.[4]

---

[4]       Inmate Glen Bradford was not on Wallace's enemies list, nor was there any record of Wallace having problems with Bradford.   Even accepting Wallace's claim that he communicated his concerns about  Bradford to officers 12 to 15 seconds before the biting incident, this communication was insufficient to place personnel on notice of the potential for the spontaneous inmate-on-inmate attack which occurred less than a minute later.   Prisons are "inherently dangerous places," *United States v. Tokash*, 282 F.3d 962, 970 (7th Cir. 2002), where inmate on inmate attacks are inevitable and impossible to eliminate.  *See Shrader v. White,* 761 F.2d 975, 980 (4th Cir. 1985); *Taylor v. Freeman,* 34 F.3d 266,

**Conclusion**

Wallace has failed to prove that the named Defendants violated his constitutional rights. Summary judgment will be entered in favor of Defendants and Wallace's Motion for Summary Judgment shall be denied in a separate Order to follow.[5]

Date: ___April 20, 2016___          _____/s/_____
                                                RICHARD D. BENNETT
                                                UNITED STATES DISTRICT JUDGE

---

273 n. 6 (4th Cir. 1994).  While the incident was unfortunate, it does not implicate the Eighth Amendment

[5]          In light of this decision, the Court need not evaluate Defendants' qualified immunity defense.